## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Crim. No.  01-20142-KHV |
| v. | ) | |
| | ) | Civil No. 03-3393-KHV |
| CURTIS GREGORY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Motion For Habeas Corpus Relief Pursuant To 28 U.S.C. § 2255 (Doc. #52) filed October 3, 2003; Petitioner's First Amended Petition And Traverse To Government's Response (Doc. #58) filed March 29, 2004, which the Court construes as a motion for leave to amend defendant's Section 2255 petition; and defendant's Motion To Consider A Correction Of A Consecutive Sentence To A Concurrent Sentence As Required By Laws In Guideline Manual (Doc. #59) filed September 17, 2004.  For reasons stated below, the Court overrules all three motions.

### Factual Background

On November 14, 2001, a grand jury returned a two-count indictment which charged Curtis Gregory with distribution of five or more grams of cocaine base (crack) on August 24 and October 16, 2000.  See Indictment (Doc. #1).  On May 24, 2002, the government filed a one-count information which charged defendant with use of a communication facility to facilitate the distribution of five or more grams of crack cocaine on October 16, 2000.  See Information (Doc. #32).  On June 25, 2002, the government filed a two-count superseding information which charged defendant with use of a communication facility

to facilitate the distribution of five or more grams of crack cocaine on August 24 and October 16, 2000.

See Superseding Information (Doc. #38).  Defendant pled guilty to both counts of the superseding

information.  In the plea agreement, defendant agreed that the evidence would show as follows:

> On August 24, 2000, a confidential informant (CI) working with the FBI contacted the defendant by telephone at 913-488-4108 and stated he wanted to buy crack cocaine. A meeting was arranged between the defendant and CI at the Kentucky Fried Chicken located at 2222 N. 7th Street in Kansas City, Kansas.  The agents searched the CI for money and contraband and none was found.  After meeting with the agents the CI walked to the Kentucky Fried Chicken.  Shortly thereafter the defendant arrived driving a Grey Chevrolet.  The CI got into the defendant's car and purchased 18.4 grams of crack cocaine for $700.00.  After buying the crack cocaine the CI again met with agents and provided them with the crack cocaine and the audio tape of the transaction.  The substance was later tested by a laboratory and found to contain crack cocaine.

> On October 16, 2000 a CI working with the FBI telephoned the defendant at 913-488-4108 and requested to purchase an ounce of crack cocaine.  The defendant agreed to sell the crack cocaine and told the CI to come to the defendant's house located behind Carter's Dairy Store at 1127 Quindaro in Kansas City, Kansas.  The informant was searched for money and contraband and none was found.  The agents provided the CI with a recording device so they could record and monitor the drug purchase.  The CI met the defendant at the Quindaro address and paid the defendant $800.00 for the crack cocaine.  The CI subsequently met with the agents and turned over the drugs.  The substance was later tested by the laboratory and found to contain crack cocaine.

Plea Agreement ¶ 4.  In the plea agreement, defendant waived his rights of appeal and collateral attack

unless the Court departed upward from the applicable sentencing guideline range.  See Plea Agreement

¶ 3(c).

On September 23, 2002, the Court sentenced defendant to 96 months in prison, to run concurrent

with defendant's sentence in state court.[1]  Defendant did not appeal.

---

[1]     The Court sentenced defendant to 48 months on each count, with the terms of imprisonment on Counts 1 and 2 to run consecutively.

On October 3, 2003, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. Defendant argues that the Court should vacate his plea because the government violated Brady v. Maryland, 373 U.S. 83 (1963) when it failed to disclose impeachment information about the CI.  In particular, defendant maintains that the CI was on parole and that the terms of his parole agreement prohibited him from acting as a paid informant.[2]  The government timely filed a response to defendant's motion.  On March 29, 2004, more than three months after the government responded, defendant filed an amended petition and traverse to the government response.  See Petitioner's First Amended Petition And Traverse To Government's Response (Doc. #58).  In his amended petition, defendant argues that counsel was ineffective because (1) he did not discover evidence to impeach the CI before defendant pled guilty; (2) he did not explain to defendant that evidence of the CI's criminal history and the violation of his parole supervision agreement could be used at trial to either suppress evidence of the drug transactions or impeach the CI; and (3) he did not explain that if defendant later discovered impeachment information, he could not withdraw his guilty plea.  See id. at 3.  Defendant maintains that if he had known that the CI was on parole and that use of the CI was "illegal," he would have insisted on going to trial.  See id. at 2.

On September 17, 2004, defendant filed a motion which asks the Court to alter his sentence so that the terms of imprisonment on Counts 1 and 2 run concurrently rather than consecutively.

### Analysis

**I.      Section 2255 Motion**

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the

---

[2]      Defendant refers to exhibits which allegedly support this claim, but he has not provided them to the Court.  See First Amended Petition (Doc. #58) at 4.

proceedings which led to defendant's conviction were correct.  See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989).  To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).  A hearing on in a Section 2255 proceeding is not required unless (1) defendant alleges specific and particularized facts which, if true, would entitle him to relief and (2) the motion and the files and records of the case do not conclusively show that defendant is entitled to no relief.  See 28 U.S.C. § 2255; United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by the record).

### A.      Procedural Bar – Waiver Of Collateral Challenges

A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence is generally enforceable.  United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003); United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001), cert. denied, 534 U.S. 1085 (2002); United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998).  The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.  United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc); see United States v. McMillon, No. 02-20062-01-JWL, 2004 WL 2660641 at *3 (D. Kan. Nov. 19, 2004).

To determine whether the disputed issue falls within the scope of the waiver, the Court begins with the plain language of the plea agreement.  United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004); Hahn, 359 F.3d at 1328.  The Court construes the plea agreement according to contract principles and

based on what defendant reasonably understood when he entered his plea. United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004). The Court strictly construes the waiver and resolves any ambiguities against the government and in favor of defendant. Hahn, 359 F.3d at 1343.

The plea agreement states in relevant part as follows:

> The defendant understands and acknowledges his right to appeal the sentence imposed in this case as authorized by 18 U.S.C. § 3742, and to challenge his sentence herein as authorized by 28 U.S.C. § 2255, but hereby knowingly and intelligently waives those rights, unless the Court departs upward from the sentencing guideline range it determines applies.

Plea Agreement ¶ 3(c). The scope of this waiver includes the right to collaterally attack by a Section 2255 motion any matter in connection with defendant's *sentence*, but it does not address defendant's right to challenge his *conviction* or the voluntariness of his plea. Accordingly, defendant's claims do not fall within the scope of the waiver in the plea agreement.[3] See Bridgeman v. United States, 229 F.3d 589, 591-92 (7th Cir. 2000) (defendant not precluded from raising challenge to his conviction despite waiver of right to challenge his sentence).

**B.     Procedural Bar - Failure To Appeal**

"[Section] 2255 is not available to test the legality of matters which should have been raised on appeal." United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994) (quoting United States v. Walling, 982 F.2d 447, 448 (10th Cir. 1992)). Defendant is precluded from raising issues in a Section 2255 petition which were not raised on direct appeal "unless he can show cause for his procedural default and actual

---

[3]     The Court notes that the standard plea agreement in this District now specifically includes a waiver of the right to appeal or collaterally attack any matter in connection with the "prosecution, conviction and sentence."

- 5 -

prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." Allen, 16 F.3d at 378. As to defendant's claim that the government violated Brady, defendant has not satisfied any of these exceptions.

### C.    Procedural Bar - One Year Time Limit

Section 2255 provides a one-year period of limitation for motions brought under that section. 28 U.S.C. § 2255. The limitation period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Because defendant did not file a direct appeal, his conviction was final on October 7, 2002 – ten days after the Court entered judgment. Accordingly, his Section 2255 motion filed on October 3, 2003 is timely. That motion includes defendant's claim that the government violated Brady because it did not disclose evidence related to the impeachment of the CI.

On March 29, 2004, nearly six months after defendant filed his initial motion and without leave of court, defendant filed an amended petition and traverse to the government's response. See Doc. #58. In that document, defendant raised an ineffective assistance of counsel claim. The Court construes defendant's amended petition as a motion for leave to amend his Section 2255 petition.

- 6 -

Rule 15 of the Federal Rules of Civil Procedure governs a motion to amend a Section 2255 petition if it is made before the one-year limitation period for filing a Section 2255 petition has expired.  United States v. Ohiri, 133 Fed. Appx. 555, 559 (10th Cir. June 7, 2005).  An untimely amendment to a Section 2255 motion which clarifies or amplifies a claim or theory in the original motion by way of additional facts may, in the district court's discretion, relate back to the date of the original motion if and only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case.  United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000).

Because the government had responded to defendant's Section 2255 petition when defendant sought to amend his petition, Rule 15(a) required that defendant seek leave to amend.  Although Rule 15(a) requires that leave to amend "be freely given when justice so requires," whether leave should be granted is within the trial court's discretion.  See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991).  In this regard, the Court considers undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party or futility of amendment.  Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993).  Untimeliness alone is a sufficient reason to deny leave to amend, however, especially when the party filing the motion has no adequate explanation for the delay.  Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1132-33 (10th Cir. 1987); Waddell & Reed Fin., Inc. v. Torchmark Corp., 223 F.R.D. 566, 630 (D. Kan. 2004).  The Court has the discretion to deny leave to amend for untimeliness or undue delay without a showing of prejudice to the

other party after looking to the reasons for the delay and the presence of excusable neglect.  Steinert v. The Winn Group, Inc., 190 F.R.D. 680, 683 (D. Kan. 2000).  If movant has been aware of the facts on which the amendment is based for some time prior to the motion to amend, the Court may properly deny the motion for failure to demonstrate excusable neglect.  Braintree Labs., Inc. v. Nephro-Tech, Inc., 31 F. Supp.2d 921, 923 (D. Kan. 1998).

Here, defendant has not offered any reason for his delay of nearly six months in seeking to amend his Section 2255 petition.  Defendant's proposed ineffective assistance claims appear to respond to government arguments that his Brady claim is procedurally barred.  The unexplained delay in responding to the government's motion, however, is simply too great to allow defendant to amend his petition.  Cf. Espinoza-Saenz, 235 F.3d at 504-05 (Section 2255 movant could not assert new claims in motion to amend after expiration of one-year time limit).

> D.   *Brady* Claim

In addition to the procedural bar discussed above, defendant's Brady claim lacks substantive merit. To establish a violation of the principles enunciated in Brady, defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material. United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir. 1994).  Defendant has not satisfied the first and third elements.

> 1.   Suppression Of Evidence

Defendant has not shown that the government suppressed evidence.  On December 13, 2001, the day of defendant's arraignment, the Court ordered that "[w]ithin a reasonable time period after arraignment, the government shall comply with Rules 12(d)(2) and 16 and Brady/Giglio[v. Maryland, 405

U.S. 150 (1972)]." <u>General Order Of Discovery And Scheduling</u> (Doc. #11) filed December 13, 2001 at 1. Defendant argues that the government violated the order because it did not provide the impeachment evidence within a reasonable time after arraignment. The order did not specify when the government had to disclose <u>Brady</u>/<u>Giglio</u> material, but the government is generally required to disclose <u>Brady</u> and <u>Giglio</u> matters which relate to impeachment of a witness no later than five days before trial. <u>See</u> <u>United States</u> <u>v. McElhiney</u>, No. 98-40083-RDR, 2002 WL 31498985, at *2 (D. Kan. Aug. 2, 2002) (ordering production of impeachment material under <u>Giglio</u> five days before trial); <u>United States v. Nowicki</u>, 1987 WL 19820, at *1 (N.D. Ill. Nov. 2, 1987) (absent exceptional circumstances, tender of <u>Brady</u>/<u>Giglio</u> material five days before trial sufficient).[4] Trial in this matter was set for March 19, 2002. Fourteen days before the scheduled trial, defendant filed a motion to continue – which the Court sustained.[5] The Court

---

[4]    <u>See also</u> <u>United States v. Villarman-Oviedo</u>, 325 F.3d 1, 13 (1st Cir. 2003) (disclosure of witness identity and cooperation agreement four days before trial sufficient under <u>Brady</u> and <u>Giglio</u>); <u>United States v. Ellender</u>, 947 F.2d 748, 756 (5th Cir. 1991) (district court ordered production of <u>Brady</u>/<u>Giglio</u> material seven days before trial); <u>United States v. Higgs</u>, 713 F.2d 39, 44 (3d Cir. 1983) (<u>Brady</u> material going to credibility of government witness may be disclosed on day witness testifies), <u>cert.</u> <u>denied</u>, 464 U.S. 1048 (1984); <u>United States v. Pollack</u>, 534 F.2d 964, 973-74 (D.C. Cir.) (<u>Brady</u> disclosures three days and one day before trial adequate), <u>cert. denied</u>, 429 U.S. 924 (1976); <u>United</u> <u>States v. Storey</u>, 956 F. Supp. 934, 943 (D. Kan. 1997) (disclosure of <u>Giglio</u> material seven days before trial); <u>United States v. Padilla</u>, 1995 WL 105280, at *1 (S.D.N.Y. Mar. 13, 1995) (because case of great magnitude and expected to last three months, government required to provide <u>Giglio</u> material one week before direct testimony of each witness); <u>United States v. Williams</u>, No. 93-40001-SAC, 1993 WL 270504, at *9 (D. Kan. June 16, 1993) (disclosure of <u>Brady</u>/<u>Giglio</u> information three days before trial sufficient); <u>United States v. Coggs</u>, 752 F. Supp. 848, 849 (N.D. Ill. 1991) (government required to disclose <u>Giglio</u> material three days before trial).

[5]    On February 4, 2002, the Court set the case for trial on March 19, 2002. On March 5, 2002, defendant filed a motion to continue the trial and the Court re-set it for May 14, 2002. <u>See</u> <u>Order</u> (Doc. #19). On March 26, 2002, defendant's counsel asked to withdraw. The Court sustained the motion and appointed new counsel in early April of 2002. The Court also set a new schedule for the filing of pretrial motions and scheduled a hearing on pretrial motions for May 21, 2002. After counsel informed

(continued...)

appointed new counsel for defendant in early April of 2002, and it did not schedule another trial date because new counsel indicated that defendant wanted to plead guilty. Because defendant pled guilty more than five days before any scheduled trial, the government did not violate its obligations to disclose impeachment material under Brady and Giglio within a reasonable time period after the arraignment.

2.    Materiality Of Evidence

After a guilty plea, a defendant may only challenge the voluntariness of his plea. United States v. Wright, 43 F.3d 491, 495 (10th Cir. 1994) (citing United States v. Broce, 488 U.S. 563, 569 (1989)). Under limited circumstances, the government's violation of its Brady obligations can render a defendant's plea involuntary. Wright, 43 F.3d at 496. In the context of a motion attacking the validity of a plea, "evidence is considered material where there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." United States v. Walters, 269 F.3d 1207, 1214 (10th Cir. 2001) (quoting United States v. Avellino, 136 F.3d 249, 256 (2d Cir.1998)). "Assessment of that question involves an objective inquiry that asks not what a particular defendant would do but rather what is the likely persuasiveness of the withheld information." Walters, 269 F.3d at 1215 (quoting Avellino, 136 F.3d at 256).

To determine the likely persuasiveness of the withheld information, the Court evaluates whether the government was required to disclose the information under Brady. Impeachment evidence falls within Brady when the reliability of a given witness may be determinative of defendant's guilt or innocence. See United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio, 405 U.S. at 154. Impeachment evidence is

---

[5](...continued)
the Court that defendant intended to plead guilty, the Court scheduled a change of plea hearing for May 28, 2002, which was continued several times until defendant pled guilty on July 8, 2002.

material where the witness at issue "supplied the only evidence linking the defendant to the crime" or "where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995), cert. denied, 516 U.S. 1165 (1996); see Avellino, 136 F.3d at 256 (impeachment evidence may be considered to be material where witness supplies only evidence linking defendant to crime). The burden is on defendant to prove the materiality of the undisclosed information. See id. (citing United States v. Hudson, 813 F. Supp. 1482 (D. Kan. 1993) and United States v. Burger, 773 F. Supp. 1419, 1426 (D. Kan. 1991), aff'd, 968 F.2d 21 (10th Cir. 1992), cert. denied, 507 U.S. 959 (1993)).

While the CI was a key witness, both drug transactions between defendant and the CI were recorded and monitored by agents. Before each drug transaction, agents searched the CI and then provided him a recording device and money to purchase drugs. Immediately after each drug transaction, the CI surrendered to agents crack cocaine and a tape recording of the encounter with defendant. Therefore the CI did not supply the only evidence to link defendant with the crime. See generally United States v. King, 803 F.2d 387, 391 (8th Cir. 1986) (when informant's evidence witnessed and recorded, less scrutiny necessary since evidence does not rest on informant's evidence alone). Defendant apparently claims that on the audio tape, he was talking to the CI about selling marijuana, not crack cocaine.[6] See Memorandum Of Law (Doc. #53) at 5. Defendant, however, does not dispute the authenticity of the audio tapes. Moreover, defendant does not explain how the CI obtained crack cocaine during the tape-recorded transactions, if not from the defendant. In sum, evidence of the criminal history and parole status of the CI

---

[6]     Such a defense relies primarily on defendant's intent when he made the statements to the CI. Defendant has not presented facts which suggest that this defense depends in any significant respect on the credibility of the CI. In other words, defendant could have maintained that regardless of the CI's understanding about the transaction, defendant only intended to sell marijuana, not crack cocaine.

does not undermine confidence in the outcome of this case.  See Strickler v. Greene, 527 U.S. 263, 290

(1999).  Accordingly, the impeachment evidence about the CI was not sufficiently material under Brady.

See Hughes, 33 F.3d at 1251.  Defendant has not presented objective evidence that if the government had

disclosed impeachment evidence about the CI, he would have insisted on going to trial.  See Walters, 269

F.3d at 1214-15 (no objective evidence that if defendant had impeachment information he would have

insisted on going to trial); see also Giacobbe v. United States, 131 Fed. Appx. 316, 317 (2d Cir. 2005)

(withholding impeachment material does not provide basis to challenge validity of guilty plea).

Defendant maintains that his plea was involuntary because he did not know of the impeachment

evidence about the CI.  The Supreme Court, however, has concluded that the Constitution does not require

pre-guilty plea disclosure of impeachment information.  See United States v. Ruiz, 536 U.S. 622 (2002).

In Ruiz, the Ninth Circuit held that a guilty plea "is not 'voluntary' . . . unless the prosecutors first made the

same disclosure of material impeachment information that the prosecutors would have had to make had the

defendant insisted upon a trial."  Id. at 629.  The Supreme Court reversed.  It reasoned as follows:

> [I]mpeachment information is special in relation to the *fairness of a trial*, not in respect
> to whether a plea is *voluntary* ("knowing," "intelligent," and "sufficient[ly] aware").  Of
> course, the more information the defendant has, the more aware he is of the likely
> consequences of a plea, waiver, or decision, and the wiser that decision will likely be.  And
> the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the
> defendant fully understands the nature of the right and how it would likely apply *in general*
> in the circumstances--even though the defendant may not know the *specific detailed*
> consequences of invoking it.  * * *
>
> It is particularly difficult to characterize impeachment information as critical
> information of which the defendant must always be aware prior to pleading guilty given the
> random way in which such information may, or may not, help a particular defendant. The
> degree of help that impeachment information can provide will depend upon the defendant's
> own independent knowledge of the prosecution's potential case--a matter that the
> Constitution does not require prosecutors to disclose.

. . . . [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.  * * *

. . . [A] constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice.  The Ninth Circuit's rule risks premature disclosure of Government witness information, which, the Government tells us, could "disrupt ongoing investigations" and expose prospective witnesses to serious harm. And the careful tailoring that characterizes most legal Government witness disclosure requirements suggests recognition by both Congress and the Federal Rules Committees that such concerns are valid.

Ruiz, 536 U.S. at 629-32 (emphasis in original) (citations omitted).

Here, defendant signed a plea petition which included an acknowledgment that he had the right to hear and cross-examine all witnesses who testify at trial against him, and that he waived his right to trial. See Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #45) ¶¶ 7-8.  Thus, defendant knew the nature of his Sixth Amendment right and how it would apply generally to his circumstances.  Defendant cannot escape his plea upon discovery of evidence which tends to impeach the CI.  See Brady, 397 U.S. at 757 (defendant not entitled to withdraw plea merely because he later discovers that his calculus misapprehended quality of government's case).  In sum, defendant's claim under Brady is without merit.

E.      Ineffective Assistance Of Counsel

In addition to the procedural bar discussed above, defendant's ineffective assistance claims lack substantive merit.  Defendant argues that counsel was ineffective because (1) he did not discover evidence to impeach the CI before defendant pled guilty; (2) he did not explain to defendant that evidence of the CI's criminal history and the violation of his parole supervision agreement could be used at trial to either

suppress evidence of the drug transactions or impeach the CI; and (3) he did not explain that if defendant later discovered impeachment information, he could not withdraw his guilty plea.

To establish ineffective assistance, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." Walling, 982 F.2d at 449.  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988) (citation omitted), cert. denied, 489 U.S. 1089 (1989).

As to the second element, to demonstrate "prejudice" in context of ineffective assistance of counsel during the plea process, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  A defendant's "mere allegation" that he would have insisted on trial but for the errors of counsel, although necessary, is ultimately insufficient to entitle him to relief. Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001); see United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993), cert. denied, 510 U.S. 1184 (1994).  Rather, the Court looks to the factual circumstances surrounding the plea to determine whether defendant would have proceeded to trial. Miller, 262 F.3d at 1072; see

- 14 -

Gordon, 4 F.3d at 1571.  The strength of the government's case is often the best evidence of whether a

defendant in fact would have changed his plea and insisted on going to trial.  See Hill, 474 U.S. at 59-60.

The Supreme Court has noted:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.  For example, where the alleged error of counsel is a failure to investigate or discover exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial.

Id. at 59.

### 1.    Failure To Discover Impeachment Evidence

Defendant argues that counsel was ineffective because he did not discover evidence to

impeach the CI before defendant pled guilty.  Defendant, however, has not alleged that counsel could have

discovered the impeachment information with reasonable effort.  As explained above, the government was

not required to disclose the impeachment evidence until five days before trial.  Counsel's failure to discover

such evidence before the government was required to disclose it is not objectively unreasonable.  Therefore

counsel's performance was not deficient.

In addition, defendant has not alleged facts which show a reasonable probability that if counsel

discovered the impeachment evidence, defendant would have insisted on going to trial.  See Hill, 474 U.S.

at 59.  As explained above, the impeachment information was not material under Brady, did not impact the

voluntariness of defendant's plea and does not undermine confidence in the outcome of this case.

Defendant's conclusory, unverified statement that if counsel had discovered such information, he would

have insisted on going to trial is insufficient to establish prejudice.  In particular, defendant has not explained

how the credibility of the CI was relevant to his defense that during the conversations with the CI, defendant was referring to the sale of marijuana, not crack cocaine.  As noted above, if defendant truly intended to only sell marijuana to the CI, defendant could have proceeded on that defense without raising a significant challenge to the credibility of the CI.  See supra note 6.  In sum, counsel's failure to discover impeachment evidence about the CI did not prejudice defendant.

2.      Failure To Explain Use Of Impeachment Evidence At Trial

Defendant argues that counsel was ineffective because he did not explain to defendant that evidence of the CI's criminal history and the violation of his parole supervision agreement could be used at trial to either suppress evidence of the drug transactions or impeach the CI.  Defendant apparently assumes that because the CI allegedly violated the terms of his parole agreement, the Court would automatically exclude his testimony.  Defendant's assumption is faulty because (1) he has not provided a copy of the CI's parole agreement; (2) he has not shown that the government paid the CI in this case; and (3) he has not shown that the government knew that the CI could not act as a paid informant under the state parole agreement.  Furthermore, even if defendant could establish these facts, such conduct by itself is not so outrageous as to require suppression of the CI's testimony.  "Government conduct is outrageous if considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous, and intolerable that it offends the universal sense of justice."  United States v. Sandia, 188 F.3d 1215, 1219 (10th Cir. 1999).  Moreover, "[o]utrageous conduct generally requires government creation of a crime or substantial coercion to induce the crime."  Id.  Defendant has not alleged or shown sufficient facts to establish that the government's conduct in this case satisfies the standard for outrageous conduct.[7]

---

[7]      Likewise, defendant has not alleged or shown that he could establish the elements of an
(continued...)

Cf. United States v. Gell-Iren, 146 F.3d 827, 831 (10th Cir. 1998) (government conduct not outrageous simply because investigation includes paid informant who shares suspect's cultural heritage and religious faith).  Finally, counsel's alleged failure to explain to defendant that discovery of evidence of the CI's criminal history and the violation of his parole supervision agreement could be used to impeach the CI at trial was not deficient because counsel could have reasonably assumed that defendant would have known generally that impeachment information could be used to challenge the credibility of a witness.

Even if counsel did not explain the potential use of impeachment evidence, counsel's performance was not prejudicial.  As explained above, the information was not material under Brady, did not impact the voluntariness of defendant's plea and does not undermine confidence in the outcome of this case. Moreover, defendant has not alleged that if he had known of the potential use of impeachment evidence in general, he would have insisted on going to trial.  Defendant claims that if he had known of the *specific* impeachment evidence involving the CI, he would have insisted on going to trial.  In other words, defendant has not alleged or shown that counsel's failure to explain the potential use of impeachment evidence in general materially affected his decision to plead guilty.  Accordingly, defendant has not shown that counsel's performance was prejudicial.

---

[7](...continued)

entrapment defense.  Entrapment exists as a matter of law only if the evidence of entrapment is uncontradicted.  United States v. Nguyen, 413 F.3d 1170, 1177 (10th Cir. 2005) (citations omitted).  In other words, entrapment as a matter of law exists "only when there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the [criminal] act." Id. at 1178 (citations omitted).  Defendant has not alleged any facts which suggest that the government induced him to commit a crime which he would not have otherwise committed.

3.    Failure To Explain Impact Of Post-Plea Discovery Of Impeachment Evidence

Defendant argues that counsel was ineffective because he did not explain that if defendant later discovered impeachment information, defendant could not withdraw his guilty plea.  Counsel's alleged failure to advise defendant of this fact was not deficient because the Court's plea colloquy adequately explained to defendant the consequences and finality of his plea.  Furthermore, even if counsel's performance was deficient in this regard, defendant has not alleged or shown that if counsel had advised him of this fact, he would have insisted on going to trial.  Moreover, counsel's failure to advise defendant of the fact that later-discovered impeachment evidence could not be used to vacate his plea did not impact the strength of the government's case – which generally is the best evidence whether defendant in fact would have changed his plea and insisted on going to trial.  See Hill, 474 U.S. at 59-60.  Accordingly, defendant has not shown that counsel's performance was prejudicial.

**II.     Defendant's Motion To Correct Sentence (Doc. #59)**

Defendant asks the Court to alter his sentence so that the prison terms on Counts 1 and 2 run concurrently rather than consecutively.  A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.  See United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996); 18 U.S.C. § 3582(c).  Congress has set forth three limited circumstances in which a court may modify a sentence: (1) upon motion of the Director of the Bureau of Prisons in certain extraordinary circumstances or where defendant has reached 70 years of age and has served at least 30 years in prison; (2) when "expressly permitted by statute or by Rule 35;" and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(1), (2); see Blackwell, 81 F.3d at 947-48.  None of these exceptions apply here.

Defendant has not cited any statute which authorizes the Court to modify his sentence.  Moreover, Rules 35 and 36 of the Federal Rules of Criminal Procedure clearly do not authorize a substantive modification of defendant's sentence at this time.  See id.; Fed. R. Civ. P. 35 (authorizes resentencing (a) to correct illegal sentence on remand from court of appeals, (b) to reflect defendant's substantial assistance on motion of the government, and (c) to correct arithmetical, technical, or other clear error within seven days of sentencing); Fed. R. Civ. P. 36 (authorizes court to correct clerical-type errors).  Finally, the Court does not have inherent authority to resentence defendant.  See Blackwell, 81 F.3d at 949.  For these reasons, the Court does not have jurisdiction to resentence defendant at this time.

To the extent that defendant seeks to amend his Section 2255 petition, the Court overrules defendant's request as untimely.[8]  Defendant has not offered any reason for his delay of nearly one year to seek to amend his Section 2255 petition.  The unexplained delay is simply too great to allow defendant to amend his petition.

### III.    Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief.  Accordingly, no evidentiary hearing is required.  See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where factual matters raised by Section 2255 petition may be resolved on record).

**IT IS THEREFORE ORDERED** that Petitioner's Motion For Habeas Corpus Relief Pursuant To 28 U.S.C. § 2255 (Doc. #52) filed October 3, 2003 be and hereby is **OVERRULED**.

---

[8]        Even if the Court were to address the merits of defendant's request, the Court is convinced after reviewing the record that the request would not support relief under Section 2255.  At the time of defendant's sentencing, the Court understood that it had discretion to enter concurrent sentences on Counts 1 and 2, but it choose to impose consecutive sentences.

**IT IS FURTHER ORDERED** that Petitioner's First Amended Petition And Traverse To Government's Response (Doc. #58) filed March 29, 2004, which the Court construes as a motion for leave to amend defendant's Section 2255 petition, be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Consider A Correction Of A Consecutive Sentence To A Concurrent Sentence As Required By Laws In Guideline Manual (Doc. #59) filed September 17, 2004 be and hereby is **OVERRULED**.

Dated this 12th day of September, 2005, at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge